We're going to take the next case, United States v. Howells. Good morning and may it please the Court. My name is Courtney McKeon and I represent the appellant, Defendant Stephen Howells. The sentence of 580 years that the District Court imposed on Mr. Howells was procedurally unreasonable, substantively unreasonable, and violated the Eighth Amendment. My argument today will focus on procedural and substantive unreasonableness. The District Court repeatedly referred to its 580-year sentence as a guideline sentence. However, in calculating that sentence, the District Court disregarded the plain language of both of the subsections of Sentencing Guideline 5G1.2 that were applicable to Mr. Howells' case. Guideline 5G1.2 applies to defendants like Mr. Howells who are convicted of multiple counts. Under Guideline 5G1.2, the District Court was required to take two steps to determine Mr. Howells' guideline sentence. Are we on plain error review here? No, Your Honor. What's the standard here? The standard here is abusive discretion because the defense preserved the objection to the stacking of the sentences in the sentencing memo, and also in the sentencing memo referred to the guideline sentence as life. But the District Court referred to the guideline sentence as life. It then recognized that no count of conviction carried a potential life sentence and then proceeded to that part of the guideline which talks about imposing sentences consecutively to the point that's needed to reach the guideline sentence. So I'm not sure I can understand your procedural challenge that the District Court erred in calculating the total punishment. As I said, when I read the full sentencing transcript, it appears clear that the District Court understood that the guideline imprisonment range was life, and then its reference to the 580-year sentence as a guideline sentence was a shorthand referral to the fact that now it was going to impose consecutive sentences to satisfy the life sentence. If you look at what exactly the order the District Court spoke in, it becomes clear that the District Court did miscalculate the total sentence. What the District Court said precisely was, however, since no count of conviction carries a potential life sentence, the guideline sentence becomes 580 years or 6,960 months pursuant to United States Guidelines Section 5G1.2B. So it cites Guideline B. That's the guideline that says if the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, the court should not sentence consecutively. No, that's Guideline D, Your Honor. The court cited Subsection B, which is where the guideline instructs the court to determine the total punishment. The District Court referred to that subsection for the proposition. How does any of this matter? I mean, it's a life sentence. A defendant cannot serve more than life. There are three reasons. So what does this matter? What the judge was doing was dealing with a case of horrific crimes, ensured that no one of them would be minimized. It would impose the maximum sentence for each. But your client can't serve more than life. It matters for three reasons. The first reason is that sentencing is not just about the imprisonment imposed on a defendant. The purposes of sentencing, and it's laid out right in 3553, include the message that is sent to the public about the seriousness of the offense, about respect for the law, and about justice. But it's a matter of harmlessness to your client. You're talking about messages to the public. Why isn't any error here harmless? It matters to Mr. Howells personally for two reasons. The first is that he has to live with the knowledge of the sentence that he received. There's an emotional and a psychological effect of a sentence. Do you want us to compare that to the emotional consequences of his crimes to the victims? Which were terrible. Right. He knows he's doing a life sentence. Whether he's doing it because the judge said life or because the judge said 580 months doesn't seem to me to carry a lot of psychic trauma with it. The second reason that's important to Mr. Howells personally is that it's common practice when a prisoner arrives in the Bureau of Prisons for other prisoners to ask to see their judgment. What should the sentence be? The sentence should be if the total punishment here was life and the government concedes that, then under subsection D, the plain language of that subsection requires the district court to impose The district court should have calculated something that was akin to the total punishment of life. Less than 580 years. Perhaps consecutive sentences on the first three counts, which would have been a sentence of 90 years. Or on the first four. If we were to remand for resentencing, the sentence would be life. That's correct, Your Honor. And that's important because If the judgment were to say 90 years instead of 580 years, does that really make any difference? It does make a difference because the court is required, it's procedural error, to calculate a guideline sentence incorrectly. The court here did that. Procedural error can be harmless. Like any other error, it can be harmless. And since you're conceding that he should serve a life sentence, having it corrected to 90 years rather than 580, it yields him no benefit that I can see. But it does yield the benefit to the public of the message that this kind of sentence sends. There's a vast difference between a sentence of 580 years for a non-homicide offense and a sentence of 90 years. Under the circumstances, doesn't 580 years send a better message than 90 years? This sentence is the highest sentence that the Northern District of New York has ever imposed in a child pornography production case. In a child pornography production case, he kidnapped a 6-year-old or a 7-year-old. He held the child in a soundproof room and repeatedly raped her. Now, you know, the public does, and videotaped it. The public may very well want to know that the maximum sentences on these multiple crimes were indeed imposed. But in similarly heinous cases, and the defense... I'm not sure you've cited us to a similarly heinous case. Well, for instance, in, and I don't know how to pronounce his name, I apologize. It's O-E-H-P-E, which the court cited in the Brown opinion. There, a man abused his stepdaughter for two years and produced videos of that that the court referred to as the most prolific series of child pornography viewed worldwide. I dispute the horrible effect of those crimes, but here we have, what is it, six, seven children who were subjected to this. Two of them kidnapped. These are circumstances that aggravate even beyond the horrific circumstances of the case you've given us. And the judge basically decided that every crime charged would carry its maximum penalty. I don't know how you can think the public needs a different message sent than that one. So stick with your, the public has a right to have this sentence reduced argument. Because this sentence is literally 450 years longer than the sentences imposed in similarly horrific cases. But there are multiple counts. You want these other crimes to be free. No, Your Honor, I'm not suggesting that. There are multiple counts in other cases. And also, if we leave the reasonableness of a sentence to prosecutorial discretion, here the prosecutor exercised the discretion to charge 21 separate counts. In similarly horrific cases, the prosecutor charges things all under one count. If we're deciding that- You could have charged the abuse of these individual children in a single count. In the Irie case out of the 11th Circuit, the prosecutor there did charge that in one count, and that was 50 different children. These are on multiple different occasions. What was the charge in that case? The charge in that case was the same as in this case. It was 2251, production of child pornography. We're not talking about, all right, let me let you make your argument. I see that I'm almost out of time, Your Honor. I believe I've covered everything now. I'd like to reserve two minutes for rebuttal. May it please the Court, my name is Stephen Clymer. I represent the United States of America. I'd like to begin by pointing out two things. First, there was no procedural error in this case. The district court judge described precisely the process and used precisely the process that this court announced in McLeod and Rahman for calculating the sentence under these circumstances. He does describe the 580 years as total punishment, which is maybe a slight error, but- I disagree with that, Your Honor. And I'll read the sentence because I don't think that's what the judge said. He said, as further instruction- Is it 194 or is it somewhere else? I think you have to be at the mic to be recording. Excuse me, I'm sorry, Your Honor. He said, this is at 194, as further instructed at 5G1.2D, D, not B, the sentence imposed on each count of conviction shall run consecutively to the extent necessary to produce a combined sentence equal to the total punishment, which again in this case is 580 years, which is 580 years, I believe, modifies the combined sentence part. Well, he says the total sentence is 580 years. The total sentence was life. And your adversaries just pointed out that if he had stopped at the first three counts of conviction and run them consecutively, he would have reached life, and therefore that continuing to impose consecutive sentences does not comport with 5G1.2D. I disagree, Your Honor, and I would like to explain why. Here there was no dispute about the guidelines calculations. There was no dispute that the guidelines, when calculated, reached a term of life imprisonment. There's no dispute that there's no count of conviction here that had a statutory maximum higher than 30 years. So the judge was faced with a situation where no count of conviction could possibly achieve a term of life imprisonment. In McLeod and in Raman, this Court very clearly explained what's to happen in those circumstances. First, and this is under 5G1.2B, not D but B, the Court is to impose, quote, the total punishment to the extent possible on each count of conviction. Here, because the statutory maximum was 30 years, the judge was bound or at least was advised by the guidelines under subsection B to impose a stat max 30 years on each count of conviction. McLeod makes that very clear. The next question the Court had is, what do I do about concurrent versus consecutive? And what 5G1.2D says is, under those circumstances, you're to impose consecutive sentences on each count of conviction, and each one now is the stat max, to the extent necessary to achieve, quote, the total punishment, which is here a life sentence. This Court has addressed that issue in three cases. It addressed it, first of all, in the Raman case, where Judge Mukasey imposed consecutive maximum sentences on each count of conviction to reach a 57-year sentence. So every count was maximum, and it was a statutory maximum. The next time this Court did it was in the Hamilton case, an unpublished decision, and, Your Honor, I believe you were on that panel, and there was a 150-year sentence, statutory maximums on each count, all run consecutive. The third time was very recently in the Brown decision, Nathan Brown decision. There again, statutory maximum sentence, each count of conviction, 110-year sentence. So the question becomes, when this Court or when a district court is faced with a situation where it can never achieve the life sentence because there's a finite term of years in each count, what's it to do? Is it your position that the district court would have erred if it had made the first three counts of conviction consecutive and the rest concurrent? Absolutely not, Your Honor. Any district court— The argument from your adversary is that when you reached what would have inevitably been a life sentence, the clause about running consecutive but only to the extent necessary to achieve the sentence, the guideline sentence, that the district court should have stopped. I'm not — I need you to address that argument because I think that's the thrust of the procedural error. I was about to get to that, Your Honor. The question is, is a district court bound to stop or does the district court have discretion to stop? Our position very clearly is the district court, for a number of different reasons, has discretion not to impose a 580-year sentence if it chooses not to in this case. The district court could have disagreed with any enhancement of the guidelines. The district court could have decided that the life sentence was too long. The district court could have decided that under these circumstances, it wasn't bound to follow 5G 1.2d. Where do we look for the authority for that? Because I think you'll agree that if the sentence — if the guideline sentence had been something very severe but nevertheless determinative, like 450 months, as soon as the consecutive sentences reached 450, the district court would have had to stop. It could not have gone to something that would have brought it to 451. There's a decision by this court, Your Honor — The question is, why is the life sentence one that can be — can result in infinite consecutive sentences? Well, the district court has discretion in a case called KURTI, K-U-R-T-I. It's not cited in our brief, and I apologize for that. This Court said 5G 1.2d is advisory after Booker. So the district court here could have decided not to run all the sentences consecutively. That said, it's our position that if the district court believed it's appropriate, and here the district court judge very clearly believed it was appropriate for the reasons that you've described during this argument, that it was appropriate to run these all consecutively. So our position is not that a court is bound to do so. It clearly is not bound to do so. But if there was ever a case where it was appropriate to do so, Your Honor, it was this case. That is our position here. And for that reason, there was no procedural error. If you disagree with me — Where is the limit? So can you tell me when your adversary alluded to the fact that she is unaware of a higher sentence in the Northern District of New York, is that also your understanding? I don't know of one, Your Honor. Is there a higher sentence in the history of the Second Circuit? I do not know the answer to that. I don't think there is. So in the United States, for Yousef, as I understand it, the sentence was 240 years. That's the highest sentence within the Second Circuit. So where is the — is there a limit, other than what, as your adversary suggested, is a limit that's created by the charging instrument, the indictment in this case? There is, Your Honor. The limit is this Court's guidance on substantive reasonableness. That's my question. Where is this — is this at the outer edge of substantive reasonableness? Your Honor — These are horrific facts, so I'll — This case may present a situation, Your Honor, where a district court judge could reasonably believe that in communicating to the community the moral depravity and the seriousness and the harm caused by this crime, that whatever the maximum under the statute was, that was a substantively reasonable sentence. I don't think that would be improper to do, but you don't have to reach that decision, Your Honor. I can assess that. My problem is that — and it's not really a problem, it's an observation. The observation is that in the Second Circuit we've literally been supine when it comes to matters of substantive reasonableness, except in the context of child pornography. But this is vastly more than a terrorism sentence. So how do we assess when a sentence is substantively reasonable, even though if you stack up all of the different counts, it may technically have been permissible? I'll say two things about that, Your Honor. The first thing I'll say is I think at some point there has — and there is, I know there is — there's a considerable amount of deference given to a district court judge. This is not something this district court judge did lightly here. This is a case where the district court judge was intimately familiar with the facts, as you can tell from the discussion and sentencing. And this was a case, Your Honor, where I think it was eminently reasonable for this district court judge to communicate that this crime served the statutory maximum sentence. Now, suppose there have been twice as many counts or three times as many counts. Maybe there is some point where there is a limit. I don't think this case approaches that limit. Why, when all that the defendant can serve is life? I mean, in some ways we are debating the severity of this sentence when, in fact, it's the same as the terrorist sentence. It's the same as some sentences for murder. Life. Isn't that right? It's just affected by a term of years that's — that the defendant will never serve. That's correct, Your Honor. But the court — the district court is also speaking to the community and expressing moral condemnation for this conduct. So if the court said, well, I'm going to sentence for these counts, where he did these things to these children, but not on these counts where he did these other things to these other children, I think there's a cost to doing that. And it seems to me if that's the choice this court has to make in deciding what's reasonable, it's better to err on the side of giving the district court the discretion to make that decision than taking that away. We're not saying the district court was required to do that. As I said, there's a number of times a district court in this process can decide, it's an advisory guideline system, I'm not going to do this. So that I understand the multiple counts of conviction in this case, The production of child pornography is each count represents a videotape act of rape or abuse of one of the children, right? On a separate occasion. Yes. So each occasion has its count. Correct. Okay. On the multiple counts of possession of child pornography, what distinguishes them? The unit of measure under the possession statute, Your Honor, is the media that holds the child pornography. So this defendant here had five internal hard drives that were encrypted on his computer. There was a count of possession charge for each one of those hard drives. Okay. May I finish answering Judge O'Leary's question? The second point I wanted to make, Your Honor, is I understand the difficulty of those questions. You need not reach them here. Plain error standard does apply here. The defendant never raised the arguments that have been raised in the brief below. They simply were not raised. And in any event, any error here clearly would be harmless. Thank you. That's all I have. Ms. McKeon, you did reserve two minutes. Thank you, Your Honor. Even if the plain error standard does apply, under Bennett, which was announced by this court in October, once error is shown in calculating the guideline sentence, the third and fourth elements of the plain error review are essentially presumed. So even under that standard, Mr. Howells has shown that the court committed procedural error. If you look back at that sentence, I think it's clear that the sentence would have been the same in any event, and you've acknowledged that it would be a life sentence. But that's not the same sentence. It may practically have the same effect. But to the extent then we get into whether or not the defendant has suffered any harm, he cannot. There is absolutely no way he can serve a sentence more than his natural life. And so to that extent, how do you get to the third or fourth prong of plain error? I completely understand if we were in the 450, 451 month, even though that one month might not seem significant to someone who's not serving it. But here, where it's life, I'm not sure I see where the third and fourth prong are satisfied. I think an important thing to remember is that the district court here didn't get into an esoteric recitation of what is life? How many months is life? What equals life? The district court here, by erring at subsection B, believed that the total punishment was 580 years, and that the only way to reach that was by stacking the statutory maximums on each and every count. I think you've expressed this, that if we were to remand this, your client would be sentenced at least to life. Yes, Your Honor. So what's the harm? I'm just trying to understand what the harm is to your client. You talk about the harm to the public, but what's the harm to your client, which is the harm that we're supposed to focus on? Every defendant who comes before the court is entitled to have their sentence calculated correctly. And every defendant who enters the Bureau of Prisons and has to show their judgment to other offenders has to be able to say, this was the right sentence. Whatever you guys are going to do to me, I deserve. This sentence here is so much higher than the sentence that other sex offenders receive that it puts him in danger. That's the practical effect to him. And to the public, Judge Sachs spoke very eloquently in his concurrence in Brown about the importance of sentencing, the importance of sentencing correctly. If we determine that there's really no difference between a life sentence and a sentence that's six times as long as life, this will have the effect of sort of a moot argument that's capable of repetition but evading review. And the district courts will continue to make the same procedural error over and over. You know, we're in a situation in this case where there didn't have to be a trial. The children didn't have to testify because your client videotaped each rape, each act of sex abuse. And so the government was able to conclusively establish each occasion where one of these children was subjected to these acts. Are you suggesting the judge could not run consecutive sentences at least for those? No. And how many years would we be up to then? For each of the production counts, there were 17 counts, so 210 years. How many? My math is terrible, but it would be 17 times 30. Yeah. So you think he'd be in much better shape in the Bureau of Prisons telling other prisoners that he'd gotten 30 years for each of 17 counts of production than he is getting the extra six counts or five counts for the different drives he had? I'm still perplexed about this, but okay, I think we have your argument. Thank you, Your Honor. We'll take the matter under advisement. Thank you very much.